UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARLES GILLEO,

                    Petitioner,                    12 Civ. 5767 (KMK)(LMS)

        - against -                                **REPORT AND
                                                    RECOMMENDATION**

LA VALLEY, Superintendent,

                    Respondent.

**TO: THE HONORABLE KENNETH M. KARAS, U.S.D.J.[1]**

On July 24, 2012, Petitioner Charles Gilleo ("Petitioner"), proceeding *pro se,* filed a

petition for a writ of habeas corpus ("the petition") pursuant to 28 U.S.C. § 2254, challenging his

April 1, 2008, judgment of conviction for twenty-four counts of Murder in the First Degree

(twenty counts under N.Y. Penal Law § 125.27(1)(a)(vii), and four counts under N.Y. Penal Law

§ 125.27(1)(a)(v)), eleven counts of Murder in the Second Degree (five counts under N.Y. Penal

Law § 125.25(1), and six counts under N.Y. Penal Law § 125.25(3)), two counts of Arson in the

Third Degree (N.Y. Penal Law § 150.10(1)), six counts of Robbery in the First Degree (N.Y.

Penal Law §§ 160.15(1-3)), Conspiracy in the Fourth Degree (N.Y. Penal Law § 105.10), Perjury

in the Second Degree (N.Y. Penal Law § 210.10), and Conspiracy in the Fifth Degree (N.Y.

Penal Law § 105.05(1)), and his aggregate term of imprisonment of life in prison without the

possibility of parole.  D.E. 2; D.E. 11, Ex. 1.[2]

_____

    [1] On October 19, 2012, Petitioner's application was referred to this Court by the
Honorable Kenneth M. Karas.  D.E. 9.
    [2] Respondent, instead of annexing all of its exhibits to a single affidavit under a single
docket entry, filed its affidavit ten times under docket numbers 11 through 20, and spread its

The petition raises the following seven grounds for relief: (1) the evidence adduced at trial was legally insufficient, (2) Petitioner was deprived of due process and the effective assistance of counsel when counsel stipulated to the admission into evidence of a statement made by Lori Presti and when the court erroneously charged the jury regarding that statement, (3) the court erred in denying defense counsel's attempt to introduce extrinsic evidence to contradict the testimony of Leeantonio Malcolm, (4) the prosecutor improperly relied on the false testimony of Leeantonio Malcolm, (5) the prosecution violated its obligation under *Brady v. Maryland,* 373 U.S. 83 (1963), (6) the court erred in denying defense counsel's motion to strike the jury panel, and (7) Petitioner was deprived of the effective assistance of appellate counsel.  D.E. 2.

For the following reasons, I conclude, and respectfully recommend that Your Honor conclude, that this Petition should be dismissed in its entirety.

## BACKGROUND

### A.  The Crime

The evidence adduced at Petitioner's trial – both testimonial and physical – was extensive.  It included the testimony of Petitioner's accomplice, Mark S. Serrano, as well as testimony from numerous jailhouse informants and various law enforcement personnel.[3]  A full recitation of those facts is unnecessary to resolve Petitioner's claims, and a careful review of the trial transcript and Respondent's factual recitation in its memorandum of law (D.E. 32), reveals that Respondent's factual recitation is both comprehensive and materially consistent with the trial

_____

various exhibits across those ten entries.  Accordingly, in citing to a given exhibit, the Court will refer to the docket entry under which the exhibit appears, as well as to the exhibit itself.

[3] Mark S. Serrano was convicted, on April 8, 2008, after a jury trial, of numerous counts of murder, arson, robbery, perjury, and conspiracy.  On February 23, 2010, the Appellate Division, Second Department, affirmed his judgment of conviction.

transcript. Accordingly, this Court relies on Respondent's factual recitation and assumes the reader's familiarity with those facts. Where a specific claim requires a fuller factual recitation, the Court will describe those facts as necessary.

Briefly, however, the evidence adduced at trial established that after midnight on January 19, 2007, Petitioner, along with his friend Mark Serrano, went to the home of Manuel "Tony" Morey, III ("Morey"), in the town of Fishkill, New York, after agreeing to forcibly steal narcotics from him. Petitioner and Serrano fatally shot Morey in the neck, fatally shot Morey's wife, Tina Morey, three times, fatally stabbed two of the Morey's children, and fatally stabbed and caused blunt force trauma to the skull of the Morey's third child, six year old Ryan. Petitioner and Serrano then took narcotics from the home and set fire to the home before fleeing in Morey's vehicle. Petitioner and Serrano then burned the Morey's vehicle.

**B. Procedural History**

In a 49 count superseding indictment, dated May 7, 2007, the Duchess County Grand Jury charged Petitioner with twenty-four counts of Murder in the First Degree, eleven counts of Murder in the Second Degree, Arson in the First Degree, Arson in the Third Degree, six counts of Robbery in the First Degree, two counts of Conspiracy in the Fourth Degree, two counts of Perjury in the Second Degree and two counts of Conspiracy in the fifth degree. D.E. 11, Ex. 2.

On April 1, 2008, a judgment was rendered in the Supreme Court of the State of New York, Duchess County, convicting Petitioner, after a jury trial, of twenty counts of Felony Murder in the First Degree, nine counts of Felony Murder in the Second Degree, two counts of Arson in the Third Degree, six counts of Robbery in the First Degree, Conspiracy in the Fourth Degree, Perjury in the Second Degree, and Conspiracy in the Fifth Degree, and sentencing him

to an aggregate term of imprisonment of life in prison without the possibility of parole.  D.E.  2;

D.E. 11, Ex. 1.

On or about December 10, 2008, Petitioner, represented by Bruce A. Petito, Esq., filed a

direct appeal in the Appellate Division, Second Department.  D.E. 13, Ex. 1.  On or about April

7, 2009, the People filed a brief in opposition.  D.E. 14, Ex. 1; D.E. 15, Ex. 1.  On or about April

23, 2009, Petitioner submitted a reply.  D.E. 16, Ex. 1.  In August of 2009, Petitioner filed a *pro*

*se* supplemental brief.  D.E. 16, Ex. 2.  On October 5, 2009, the People submitted a supplemental

brief in opposition.  D.E. 16, Ex. 3.  On February 23, 2010, the Appellate Division affirmed

Petitioner's judgment of conviction.  *People v. Gilleo*, 70 A.D.3d 1049 (2d Dept. 2010).  On June

23, 2010, the New York State Court of Appeals denied Petitioner's application for leave to

appeal.  *People v. Gilleo*, 15 N.Y.3d 750 (2010).

In a petition dated August 16, 2011, Petitioner *pro se* moved in the Appellate Division for

a writ of error coram nobis.  D.E. 17, Ex. 6.  In a letter dated September 23, 2011, the Appellate

Division informed Petitioner that it was in receipt of Petitioner's application, and that the

application was being put on the motion calendar for December 2, 2011.  D.E.  17, Ex. 7.  On or

about November 1, 2011, the People submitted a response (D.E. 18, Ex. 1),[4] and on or about

November 10, 2011, Petitioner submitted a reply (D.E. 20, Ex. 1).  On February 14, 2012, the

Appellate Division denied Petitioner's application.  *People v. Gilleo*, 92 A.D.3d 798 (2d Dept.

2012).  On or about March 20, 2012, Petitioner sought leave to appeal the denial of his

application (D.E. 17, Ex. 6), and on June 5, 2012, an Associate Judge of the New York State

Court of Appeals denied Petitioner's application for leave to appeal.  *People v. Gilleo*, 19 N.Y.3d

960 (2012).

---

[4] The People's response was comprised of an affirmation from Petitioner's appellate
counsel, Bruce Petito, Esq.

On July 24, 2012, Petitioner filed the instant petition. D.E. 2.  The Petition was dated July 5, 2012, and postmarked July 19, 2012. *Id.* Petitioner raises the following grounds for relief: (1) the evidence adduced at trial was legally insufficient, (2) Petitioner was deprived of due process and the right to the effective assistance of counsel when counsel stipulated to the admission into evidence of a statement made by Lori Presti and when the court erroneously charged the jury regarding that statement, (3) the court erred in denying defense counsel's attempt to introduce evidence to contradict the testimony of Leeantonio Malcolm, (4) the prosecutor improperly relied on the false testimony of Leeantonia Malcolm, (5) the prosecution violated its obligation under *Brady v. Maryland,* 373 U.S. at 83, (6) the court erred in denying defense counsel's motion to strike the jury panel, and (7) Petitioner was deprived of the right to the effective assistance of appellate counsel. *Id.*

On December 5, 2012, Respondent filed an affidavit in opposition (D.E. 11-20), and on February 22, 2013, Respondent filed a memorandum of law in opposition (D.E. 32).  On May 16, 2013, Petitioner submitted a reply.  D.E. 38.

## DISCUSSION

### A.  Applicable Law

"Habeas review is an extraordinary remedy." *Bousley v. United States*, 523 U.S. 614, 621 (1998)*,* citing *Reed v. Farley*, 512 U.S. 339, 354 (1994).  To be granted a writ of habeas corpus from a federal district court, a petitioner must fully and carefully comply with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Before a federal district court may review the merits of a state criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254.  If a petitioner has met these threshold requirements, a

federal district court generally may hear an application for a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court must then determine the appropriate standard of review applicable to the petitioner's claim(s) in accordance with § 2254(d).

Under AEDPA, all state remedies must be exhausted before a federal court may consider a state prisoner's petition for a writ of habeas corpus. 28 U.S.C. § 2254(b)(1)(A); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971). In the interests of comity and expeditious federal review, "[s]tates should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *see also Daye v. Attorney Gen. of the State of New York*, 696 F.2d 186, 190-91 (2d Cir. 1982). The exhaustion requirement of the federal habeas corpus statute is set forth in 28 U.S.C. § 2254(b)(1), (c):

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>> (B) (i) there is an absence of available State corrective process; or
>>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant. . . .
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he [or she] has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)(1), (c).

The Second Circuit has adopted a two-stage inquiry to determine whether the exhaustion doctrine has been satisfied. *See Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981). First, the petitioner must have "fairly presented" his or her federal constitutional claim to the appropriate state courts. *Picard*, 404 U.S. at 275-76. "A claim has been 'fairly presented' if the state courts

are apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.' " *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (quoting *Daye*, 696 F.2d at 191). In other words, the claim must have been presented in a way that is "likely to alert the court to [its] federal nature." *Daye*, 696 F.2d at 192. A claim that has not been "fairly presented" in state court is procedurally defaulted and is precluded from federal habeas review, unless Petitioner can show cause for the default, and prejudice resulting from the alleged violation of federal law, or that a fundamental miscarriage of justice will occur if the claim is not considered. *Coleman*, 501 U.S. at 750; *Galdamez v. Keane*, 394 F.3d 68, 73-74 (2d Circ. 2005). Second, having fairly presented his or her federal constitutional claim to the appropriate state court and having been denied relief, the petitioner must appeal his or her conviction to the highest state court. *Klein*, 667 F.2d at 282. Where a petitioner fails to present his or her federal constitutional claim to the highest state court, the claim cannot be considered exhausted. *Id.* (citing *Williams v. Greco*, 442 F.Supp. 831, 833 (S.D.N.Y. 1977)).

There is, however, another avenue available for exhaustion purposes. A petitioner who has failed to exhaust state remedies by pursuing a direct appeal may satisfy the exhaustion requirement by utilizing available state methods for collaterally attacking his or her state conviction. *See id.*; *see also Johnson v. Metz*, 609 F.2d 1052, 1055-56 (2d Cir. 1979) (instructing habeas petitioner who did not fairly present claim in the course of his direct appeals in New York state courts to proceed by filing a motion to vacate judgment pursuant to NYCPL § 440.10). If collateral relief is denied, the petitioner may satisfy the exhaustion requirement by employing the state appellate procedures available for review of such denial. *Klein*, 667 F.2d at 282-83. A petitioner "need not have invoked every possible avenue of state court review." *Galdamez*, 394 F.3d at 73. Instead, a petitioner must give the state courts "one full opportunity"

to resolve any constitutional issues by invoking one complete round of the State's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A habeas petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court unless he or she can demonstrate cause and prejudice or a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

AEDPA also establishes a strict limitations period, pursuant to which a petitioner has one year to file a petition. *See* 28 U.S.C. § 2244(d)(1). The limitations period begins to run from the latest of the following events:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*See* 28 U.S.C. § 2244(d)(1). Pursuant to 28 U.S.C. § 2244(d)(1)(a), a judgment becomes final "only after the denial of certiorari or the expiration of time for seeking certiorari." *Williams v. Artuz,* 237 F.3d 147, 151 (2d Cir. 2001). The expiration of time for seeking certiorari is ninety days after a decision by the New York State Court of Appeals. *Chrysler v. Guiney,* 14 F. Supp.3d 418, 433 (S.D.N.Y. 2014). If a petitioner files a state collateral attack or seeks postconviction review, the statute of limitations is tolled during the period that the claim is "pending." *Id.* citing 28 U.S.C. § 2244(d)(2).

The limitations period may be equitably tolled if the petitioner can establish that he or she was prevented from filing a timely application by "extraordinary circumstances," and that he or she acted with reasonable diligence. *Id.* A petitioner may also separately seek an equitable exception to AEDPA's limitations period by making a "credible showing of actual innocence." *Id.*

Where a timely and exhausted habeas claim is raised, comity and federalism demand that a federal court abstain from its review of a habeas petition when the last-reasoned state court opinion to address the claim relied upon an "adequate and independent finding of a procedural default" to deny it. *Harris*, 489 U.S. at 262; *see also Coleman*, 501 U.S. at 730; *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995). A state court decision will be "independent" when it "fairly appears" to rest primarily on state law. *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006) (citing *Coleman*, 501 U.S. at 740). A decision will be "adequate" if it is " 'firmly established and regularly followed' by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)).

Provided a claim meets all procedural requirements, the federal court must apply AEDPA's deferential standard of review when a state court has decided a claim on the merits. *See Torres v. Berbary*, 340 F.3d 63, 68 (2d Cir. 2003). Under AEDPA,

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent "if 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.' " *Torres*, 340 F.3d at 68 (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).

"[A]n unreasonable application of clearly established Supreme Court precedent occurs when a state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Torres*, 340 F.3d at 68 (internal quotation marks and citation omitted). The federal court must determine whether the state court's application of clearly established federal law was objectively unreasonable. *Id.* at 68-69 (citation omitted). In the Second Circuit, "the objectively unreasonable standard of § 2254(d)(1) means that the petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." *Id.* (internal quotation marks and citations omitted).

**B. Timeliness**

Pursuant to 28 U.S.C. § 2254(d)(1)(a), Petitioner's conviction became final on September 22, 2010 – ninety days after the New York State Court of Appeals denied Petitioner's application for leave to appeal. Thus, absent any tolling, the statute of limitations expired on September 22, 2011. The statute of limitations, however, was tolled from August 16, 2011– the date of Petitioner's application for a writ of error coram nobis[5] – until June 5, 2012, the date on which

_____

[5] Absent evidence to the contrary, this Court assumes that Petitioner handed his coram nobis application to prison officials on the date of its signing, August 16, 2011. *See* discussion on prisoner mailbox rule, *infra*, p. 11-12.

the New York State Court of Appeals denied Petitioner's application for leave to appeal the denial of his application for a writ of error coram nobis. As of August 16, 2011, Petitioner had 37 days left in which to file a timely petition. Thus, taking into account the tolling period, Petitioner had until July 12, 2012, to file the instant Petition (37 days from June 5, 2012).

Pursuant to the prisoner mailbox rule, a habeas petition filed by a *pro se,* incarcerated petitioner is deemed filed the day that he or she delivers the petition to prison authorities for mailing. *Houstan v. Lack,* 487 U.S. 266 (1988). The Second Circuit has observed that, "in the absence of contrary evidence, district courts in this circuit have tended to assume that prisoners' papers were given to prison officials on the date of their signing." *Hardy v. Conway,* 162 Fed. Appx. 61 (2d Cir. 2006). Here, the instant petition is dated July 5, 2012, and Petitioner avers in his petition that he "executed and submitted" his petition on July 5, 2012. D.E. 2 at p. 6. The envelope in which the petition was mailed, however, is postmarked July 19, 2012.[6] Furthermore, Petitioner filed an affidavit of service, in which he affirms that he served the petition on the New York State Attorney General's Office by mailing the petition on July 19, 2012. D.E. 4. This circumstantial evidence suggests that Petitioner did not hand his petition to prison officials on July 5, 2012. Nevertheless, this circumstantial evidence is insufficient to overcome Petitioner's averment that he submitted his petition on July 5, 2012. Indeed, July 5, 2012, and July 19, 2012, are sufficiently close in time that it is plausible that Petitioner handed his petition to prison officials on July 5, 2012, and that it was not actually mailed until July 19, 2012. Similarly, it is possible that Petitioner submitted his petition for mailing to the court on July 5, 2012, but did not submit a copy of the petition for service on the Attorney General's Office until July 19, 2012. In

---

[6] D.E. 2 includes both Petitioner's petition, as well as a copy of the envelope in which the Petition was mailed to the Court. In the copy of the envelope posted to the docket sheet in this case, the postmark is faded and illegible. The Court, however, is in possession of the original envelope, which reflects that the envelope was postmarked July 19, 2012.

any event, given this Court's recommendation that Petitioner's claims should be denied on other grounds, an investigation into the timing of when Petitioner handed his petition to prison officials would be an improvident use of this Court's resources. Accordingly, this Court concludes, and respectfully recommends that Your Honor conclude, that the petition be deemed timely filed.

### C. Petitioner's Habeas Claims

### i.    Legal Sufficiency

Petitioner asserts that the evidence adduced at trial was legally insufficient. D.E. 3, at p. 27. This claim was first raised in Petitioner's direct appeal. D.E. 13, Ex. 1. In rejecting this claim, the Appellate Division held that, other than Petitioner's convictions for conspiracy, his legal insufficiency claim with respect to the remaining counts was unpreserved. *Gilleo*, 70 A.D.3d at 1049. In support of this finding, the Appellate Division cited to NYCPL § 470.05(2) - New York's longstanding contemporaneous objection rule - and to a case from the New York State Court of Appeals that stands for the proposition that in order to preserve a challenge to the sufficiency of the evidence for appellate review, a defendant must move for a "specifically directed" trial order of dismissal. *Id.* NYCPL § 470.05(2) is an independent and adequate state law ground. *See Downs v. Lape,* 657 F.3d 97, 104 (2d Cir. 2011); *Bowman v. Racette,* No. 12 Civ. 4153, 2015 WL 1787130, at *30 (S.D.N.Y. Apr. 20, 2015) (collecting cases where NYCPL § 470.05(2) has been deemed an independent and adequate state ground).[7] Since Petitioner has

---

[7] Petitioner observes that, although the Appellate Division held that Petitioner's claim was partially unpreserved, "they nonetheless made a ruling on the claim." D.E. 37 at 11. The Appellate Division's alternative holding, however, does not permit this Court to reach the merits of Petitioner's claim. Indeed, Federal habeas review of a claim is precluded, even though a state has considered the merits of a claim, "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision." *Harris v. Reed,* 489 U.S. 255, 264 n.10 (1989). Therefore, although the Appellate Division reached the merits of Petitioner's claim, it only did so after "clearly and expressly stat[ing] that its judgment rest[ed] on a state procedural

failed to allege, let alone establish, cause for the default and prejudice arising therefrom, or that failure to review his claim will result in a fundamental miscarriage of justice, his claim is procedurally barred with respect to the counts of conviction other than the conspiracy counts.

The Appellate Division rejected Petitioner's claim with respect to the conspiracy counts on the ground that "the evidence was legally sufficient to establish [Petitioner's] guilt of conspiracy in the fourth degree and conspiracy in the fifth degree beyond a reasonable doubt." *Gilleo,* 70 A.D.3d at 1049. This determination was neither contrary to, nor an unreasonable application of Supreme Court precedent.

"The evidence is sufficient to support a conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Parker v. Matthews,* 132 S.Ct. 2148, 2152 (2012) quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original). Further, "a state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the decision was objectively unreasonable." *Id.* (internal quotation marks omitted). Put differently, a habeas petitioner must overcome "this twice-deferential standard" to prevail on a sufficiency of evidence challenge. *Id.; see also Santone v. Fischer,* 689 F.3d 138, 148 (2d Cir. 2012) ("When a federal habeas petition challenges the sufficiency of the evidence to support a state-court conviction, AEDPA establishes a standard that is 'twice-deferential.' ") quoting *Matthews,* 132 S.Ct. at 2152. Juries have "broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors draw reasonable

---

bar." *Betheas v. Walsh,* No. 9 Civ. 5037 (NGG), 2016 WL 258639, at *31 (E.D.N.Y. Jan. 19, 2016) quoting *Harris,* 489 U.S. at 263 (citations and quotations marks omitted); *see also Green v. Travis,* 414 F.3d 288, 294 (2d Cir. 2005) ("[E]ven when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted").

inferences from basic facts to ultimate facts, ... and on habeas review a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." *Id.* at 148 (citations, internal quotation marks, and italics omitted).

Here, the Appellate Division's finding that the evidence was legally sufficient to support the conspiracy counts was objectively reasonable. Pursuant to New York Penal Law § 105.10(1), a person is guilty of Conspiracy in the Fourth Degree when, "with intent that conduct constituting ... a class B or class C felony be performed, he or she agrees with one or more persons to engage in or cause the performance of such conduct ...." Conspiracy in the Fifth Degree under New York Penal Law § 105.05(1) contains the same elements as Conspiracy in the Fourth Degree with the sole distinction that it only requires that a person agree with one or more persons to engage in *any* felony. Here, Mr. Serrano's testimony, coupled with the corroborative testimony of various individuals such as Hassan Strange, Tara Strange, Dorothy Gilleo, and Joe Condon, established, at the very least, that Petitioner and Mr. Serrano agreed to go to the Morey residence on January 19, 2007, steal narcotics, and, thereafter, agreed to set Mr. Morey's car on fire. *See e.g.* T. 1740. From this evidence, a rational juror could have determined that there was legally sufficient evidence that Petitioner committed conspiracy in the fourth and fifth degrees.

### ii.    The Stipulation Regarding Lori Presti

During Petitioner's trial the parties agreed to stipulate that "if Lori Presti, girlfriend of Mark Serrano, were to testify, she would state that on the afternoon of January 19 Mark Serrano stated to her that he had shot Tony and Tina and that Charlie was at the crime scene and helped him." T. 2233. After the stipulation was read to the jury, the Court instructed the jury that the statement could only be used for impeachment purposes and not for the truth of the matter

asserted. T. 2233. Petitioner asserts, as he did on direct appeal, that (1) the trial court erred in limiting the use of this stipulation to impeachment, and (2) defense counsel was ineffective for stipulating to Presti's statement that "Charlie was at the crime scene and helped [Serrano]." D.E. 3, at p. 30.

With respect to Petitioner's claim that the court erred in limiting the stipulation to impeachment, the Appellate Division held that "[t]he remaining contentions in the defendant's main brief are unpreserved for appellate review and, in any event, are without merit."[8] *Gilleo*, 70 A.D.3d at 1050. New York's contemporaneous objection rule is an independent and adequate procedural bar that precludes federal habeas review. Further, Petitioner cannot establish cause for the default and prejudice arising therefrom, or that the Court's failure to reach this claim will result in a fundamental miscarriage of justice. Accordingly, this Court concludes, and respectfully recommends that Your Honor conclude, that this Claim should be denied.

With respect to Petitioner's ineffective assistance of counsel claim, the Appellate Division held that "[d]efense counsel's stipulation to the admission into evidence of a witness's statement in its entirety did not constitute ineffective assistance of counsel. The defendant failed to demonstrate the absence of strategic or other legitimate explanations for counsel's conduct in this regard." *Id.* This determination was neither contrary to, nor an unreasonable application of, Supreme Court precedent.

---

[8] Since the Appellate Division did not directly address this claim in its decision, the Appellate Division's reference to the "remaining contentions in the defendant's main brief" certainly included Petitioner's instant claim. *See Ellis v. Miller,* No. 97 Civ. 7049 (JG), 1998, WL 812664, at *fn. 5 (E.D.N.Y. Aug. 3, 1998) ("The Appellate Division did not address this claim directly, and therefore it was included among petitioner's 'remaining' claims that were not preserved for appellate review"); *Grant v. Ricks,* No. 00 Civ. 6861 (JBW), 2003 WL 21847238 (E.D.N.Y. July 29, 2003) (finding claims procedurally barred where Appellate Division held that "the defendant's remaining contentions... are unpreserved for appellate review [...], and, in any event, without merit").

In order to prevail on a claim of ineffective assistance under *Strickland v. Washington,*
466 U.S. 668 (1984), Petitioner must show that his counsel's representation was "fundamentally
defective" and that "there is a reasonable probability that, but for counsel's unprofessional errors,
the result of the proceeding would have been different." *Strickland,* 466 U.S. at 687.  Satisfying
this burden is particularly difficult in the habeas context because "even a strong case for relief
does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter,*
562 U.S. 86, 88 (2011).  Both AEDPA and *Strickland* standards are "highly deferential," and
"when the two apply in tandem, review is 'doubly' so." *Id.* at 105 (citations omitted).  "The
question is whether there is any reasonable argument that counsel satisfied *Strickland's*
deferential standard." *Id.*

    Here, the Appellate Division's determination that Petitioner received the effective
assistance of counsel was reasonable.  Although the portion of the stipulation that referenced
"Charlie" implicated Petitioner as an accomplice in the crime, it directly contradicted Mark
Serrano's narrative that Petitioner was the principle actor in the crime and Serrano simply the
passive accomplice.  Counsel may have reasonably concluded that introducing the entire
statement would have a larger eroding impact on Serrano's credibility than simply stipulating to a
portion of the statement would have.  Moreover, counsel may have concluded that if Presti were
to testify and be subject to cross-examination, the prosecution could reduce the impact of her
testimony.  Counsel may have agreed to the stipulation, including the reference to "Charlie," as a
compromise to avoid subjecting Presti to cross-examination.  Additionally, the court's limiting
instruction, which the jury is presumed to have followed, expressly prohibited the jury from
considering the statement for its truth.  Given these strategic explanations for counsel's conduct,

the Appellate Division's determination that counsel was not ineffective was objectively reasonable.

In any event, Petitioner cannot demonstrate that, had the reference to "Charlie" been excised from the stipulation, the result of the proceeding would have been different.  Given the weight of the remaining testimony, there is no reasonable probability that, but for the inclusion of the reference to "Charlie" in the stipulation, Petitioner would have been acquitted of any of the charges.  Accordingly, this Court concludes, and respectfully recommends that Your Honor conclude, that this claim should be denied.

### iii.    The Testimony of Leeantonio Malcolm

Petitioner raises three claims with respect to the testimony of Leeantonio Malcolm: (1) the trial court erred in preventing defense counsel from impeaching Malcolm with extrinsic evidence (D.E. 3, at p. 37), (2) the manner and timeframe in which the extrinsic evidence was provided to defense counsel violated the prosecution's obligation under *Brady v. Maryland* (D.E. 3, at p. 39), and (3) the prosecutor knowingly relied on Malcolm's false testimony in violation of Petitioner's right to due process (D.E. 3, at p. 35-36).

The Facts

Leeantonio Malcolm testified that in mid-February of 2007, both he and Petitioner were inmates at the Duchess County Jail.  According to Malcolm, he asked Petitioner "why did you guys kill the kids" and Petitioner responded that he "didn't do it" and was home with his son all night playing video games.   Malcolm then said that he had "heard that [Petitioner] did it" and asked for the "real story."  According to Malcolm, Petitioner responded that:

> the other guy did it…. [W]e were copping some drugs, we were buying some drugs from the guy that got killed, Tony.  And they were going over to his house all night they were getting high and he said in the midst of them getting high he said he went down the street

> to the gas station or store.  He said he went to the gas station. He
> said when he came back he seen the other guy he got locked up with
> running from the house and the house was on fire.

T. 606-610.  When Malcolm stated that Petitioner told him two different stories, that three

"innocent kids" were killed, and that "it's still messed up what happened," Petitioner stated:

> …you know it wasn't supposed to go down like that. It wasn't meant
> to happen like that…we were just going to get some drugs. I didn't
> mean for it to happen that way.

T. 611.  According to Malcolm, this conversation took place on a cell block. Other than himself

and Mr. Gilleo, there were three other individuals on the cellblock at the time of the conversation

- Andre Clemens, Tamar Marshall, and Francis Cannon.  After the conversation, the other

inmates in the cell block asked Malcolm what he and Petitioner were talking about and "did

[Petitioner] do it" and Malcolm responded, "yeah, he did it." T. 629-30.

Following Malcolm's testimony, Petitioner's trial counsel asked for a three day

adjournment to review five boxes of discovery material that the prosecution had provided prior

to jury selection twelve days earlier.  The discovery material included a roster that showed that in

mid-February 2007, the individuals housed on the cell block with Petitioner and Malcolm were

different individuals than the individuals Malcolm had testified were on the cell block.  The

prosecutor responded that he had provided the discovery material to counsel in a timely and

organized manner with appropriate labels.  The prosecutor further argued that the identities of

the other individuals on the cell block was a collateral matter. The court agreed with the

prosecutor that it was a collateral and speculative issue, and denied counsel's request for an

adjournment.  T. 558-667.

The State Law Claim

Petitioner asserts that he was deprived of due process by the trial court's determination that defense counsel could not attempt to impeach Malcolm with an extrinsic document relating to the roster of inmates on Malcolm's cell block in the middle of February 2007. Petitioner failed to fairly present the federal nature of this claim in state court. On direct appeal, Petitioner argued that the trial court erred in deeming the subject of counsel's proposed cross-examination to be collateral, but did not once assert the deprivation of a federal right or even allude to a constitutional violation. Instead, Petitioner primarily relied on state law cases interpreting state law. The only federal case Petitioner cited was *U.S. v. Robinson*, 544 F.2d 110 (2d Cir. 1976), a case that was based on a federal rule of evidence; not on Supreme Court precedent or constitutional law. D.E. 13, Ex. 1. Similarly, in Petitioner's leave application to the New York State Court of Appeals, he did not assert, or even allude to, the deprivation of a constitutional right. D.E. 16, Ex. 5. Nothing about the manner in which this claim was presented in state court would have alerted the state court to the federal nature of Petitioner's claim. Having failed to fairly present this record-based claim in federal terms, either in his direct appeal or in his application for leave to appeal to the New York Court of Appeals, Petitioner has failed to exhaust it. He now lacks a state procedural outlet to raise the claim for exhaustion purposes. *See Aparicio v. Artuz*, 269 F.3d 78, 90-91 (2d Cir. 2001) ("Petitioner was entitled to one (and only one) appeal to the Appellate Division and one request for leave to appeal to the Court of Appeals, both of which he pursued long ago"), citing NYCPL § 450.10(1); N.Y. Court R. § 500.10(a). Petitioner's claim, therefore, is deemed exhausted, but is procedurally defaulted. *Id.* at 90. Additionally, Petitioner has failed to allege, let alone show cause for, the default, and he has failed to show any resulting prejudice; he has also failed to allege or demonstrate that

"failure to consider the claim will result in a miscarriage of justice." *Id.* Accordingly, this Court is precluded from reviewing Petitioner's claim.

In any event, in rejecting this claim on direct appeal, the Appellate Division held that:

> The defendant's contention that the trial court erred in refusing to allow him to impeach a witness with extrinsic evidence is without merit. A party cross-examining a witness cannot introduce extrinsic evidence to contradict a witness's answers concerning collateral matters solely for the purpose of impeaching that witness's credibility (*see People v Carey*, 67 AD3d 925 [2009]; *People v Olivares*, 34 AD3d 602 (2006)). Here, the identities of the inmates who were incarcerated in the same unit as both the defendant and the witness sought to be cross-examined were collateral matters, bearing only on that witness's credibility.

*Gilleo*, 70 A.D.3d at 1050. "It is well-settled under both New York and federal law that a witness may not be impeached through extrinsic evidence as to matters that are collateral to the issues in the case." *Seabrook v. Lee*, No. 11 Civ. 4449 (KAM), 2012 WL 6720737, at *6 (E.D.N.Y. Dec. 27, 2012). "Collateral matters are those that bear exclusively on the witness's credibility." *Brown v. Costello*, No. 00 Civ. 4734, 2003 WL 118499, at*8 (S.D.N.Y. Jan 13, 2003). The preclusion of questioning regarding such collateral matters "does not violate a constitutional right." *Id.* Here, the identities of the other individuals on the cell block – individuals who were not privy to the conversation between Petitioner and Malcolm – related solely to Malcolm's credibility. Accordingly, the Appellate Division's exclusion of this evidence was not contrary to or an unreasonable application of federal law.

Furthermore, assuming, *arguendo,* that the Appellate Division erred in its application of state law, Petitioner is not entitled to habeas relief because he cannot show "that the error was so pervasive as to have denied him a fundamentally fair trial. . . ." *Collins v. Scully*, 755 F.2d 16, 18-19 (2d Cir. 1985); *see also Smith v. Greiner*, 117 F.App'x. 779 (2d Cir. 2004). To satisfy this burden, Petitioner would have to show that the "erroneously admitted evidence, viewed

objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Collins*, 755 F.2d at 19.  Put differently, the error "must have been 'crucial, critical, highly significant.' " *Id.* (citation omitted).  Petitioner cannot satisfy this burden.  The identities of the other individuals on the cell block with Malcolm and Petitioner is not a critical piece of evidence in light of the entire trial record and the limited probative value of such evidence.  For these reasons, this Court concludes, and respectfully recommends that Your Honor conclude, that Petitioner's claim that he was deprived of due process by the trial court's exclusion of extrinsic impeachment material should be denied.

The Brady Claim

Petitioner asserts that the government failed to satisfy its disclosure obligations pursuant to *Brady v. Maryland*, because its disclosure of the roster of individuals on the cell block with Malcolm and Petitioner was delayed and because the roster was "hidden in a mass of material." This claim was first raised in Petitioner's counseled direct appeal.  In response to the claim, the People noted that it was unpreserved because the defense did not raise a *Brady* claim before the trial court.  D.E. 15, Ex. 1, at 80.  In rejecting this claim on direct appeal the Appellate Division held that "[t]he remaining contentions in the defendant's main brief are unpreserved for appellate review and, in any event, are without merit." *Gilleo*, 70 A.D.3d at 1050.[9]  New York's contemporaneous objection rule is an independent and adequate procedural bar that precludes federal review.  Further, Petitioner cannot establish cause for the default and prejudice arising therefrom, or that the Court's failure to reach this claim will result in a fundamental miscarriage

___

[9] Since the Appellate Division did not otherwise address the *Brady* claim, its finding that Petitioner's remaining claims were not preserved for appellate review necessarily included Petitioner's *Brady* claim.  *See supra,* fn. 8.

of justice. Accordingly, this Court concludes, and respectfully recommends that Your Honor conclude, that this Claim should be denied.

<u>The Use of False Testimony Claim</u>

Petitioner asserts that he was deprived of due process because the prosecutor relied on Malcolm's false testimony. Petitioner, citing *U.S. v. Agurs*, 427 U.S. 97, 103 (1076), argues that the applicable standard by which to evaluate the prosecutor's conduct is "(1) whether false testimony was introduced, (2) whether that testimony was or should have been known to the prosecution to be false, (3) whether the testimony went uncorrected, (4) whether the false testimony was prejudicial in the sense defined by the Supreme Court in *Agurs*." D.E. 3, at p. 36. This claim was first raised in Petitioner's supplemental *pro se* brief to the Appellate Division. In rejecting this claim, the Appellate Division held that "[t]he defendant's remaining contentions in his supplemental pro se brief are without merit." *Gilleo*, 70 A.D.3d at 1050-51.[10] This determination constituted an adjudication on the merits and is entitled to AEDPA's deferential standard of review. *See Francolino v. Kuhlman*, 365 F.3d 137 (2d Cir. 2004) ("We have held that 'a state court decision need not mention a particular argument or explain the reasons for rejecting it,' *Dallio v. Spitzer*, 343 F.3d 553, 560 (2d Cir.2003) (collecting cases), and that a claim was adjudicated on the merits where it was one of the remaining contentions that the Appellate Division stated were 'without merit' "). This merit-based determination, however, "fails to explicate a coherent rationale for its rejection of petitioner's claim" and, therefore, this Court must determine whether the Appellate Division's "ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent." *Aparicio*, 269 F.3d at 94.

---

[10] Since the Appellate Division did not otherwise address this claim in its decision, its determination that Petitioner's remaining claims in his supplemental brief were without merit necessarily included his claim that the prosecution relied on false testimony. *See supra*, fn. 8.

A claim that the prosecution knew, or should have known, that it was relying on false testimony is a type of *Brady* claim. *See Agurs,* 427 U.S. at 103 (describing the "rule of *Brady v. Maryland*" as applying to the "situation" where the prosecution obtains a conviction "by the knowing use of perjured testimony"). In order to prevail under *Agurs,* a petitioner must establish that "(i) the witness actually committed perjury; (ii) the alleged perjury was material; (iii) the government knew or should have known of the alleged perjury at time of trial; and (iv) the perjured testimony remained undisclosed during trial." *U.S. v. Barcelo,* 628 F. Appx. 36 (2d Cir. 2015); *U.S. v. Cromite,* 727 F.3d 194 (2d Cir. 2013); *U.S. v. Josephberg,* 562 F.3d 478 (2d Cir. 2009). *U.S. v. Zichettello,* 208 F.3d 72, 102 (2d Cir. 2000). With respect to the fourth prong, the Supreme Court has described *Agurs* as distinguishing "three situations involving the discovery, after trial, of information favorable to the accused that had been known to the prosecution but unknown to the defense." *U.S. v. Bagley,* 473 U.S. 667, 678-79 (1985).

Here, the record reveals that the prosecution provided the inmate roster to defense counsel at an earlier time than required by state law and in a highly organized fashion. In fact, the prosecutor stated on the record that he could "swear that he labeled these Duchess County Jail documents." T. 661-63. In case there was any doubt about the propriety of this disclosure, defense counsel agreed that the prosecutor had "labeled it in a letter." *Id.* Further, since defense counsel sought to introduce the testimony at trial and was precluded from doing so based on a state rule of evidence which has been deemed constitutional, it is evident that the defense was aware of the roster at the time of trial. *Id.* Accordingly, this information was disclosed to the defense and Petitioner's claim under *Agurs* and its progeny necessarily fails.[11]

---

[11] Some Second Circuit precedent suggests that the prong of *Agurs* that requires that the falsity remain "undisclosed" during trial refers to disclosure to the jury, not simply disclosure to defense counsel. In *U.S. v. Blair,* 958 F.2d 26 (1992), the Second Circuit noted that it had always assumed, without deciding, "that perjured testimony must have remained undisclosed

In any event, Petitioner is unable to satisfy the prejudice prong of *Agurs* because there is no "reasonable likelihood that the false testimony could have affected the judgment of the jury." *Agurs,* 427 U.S. at 103. The question of the identities of the other individuals who were on the cell block with Malcolm and Petitioner in February of 2007, while potentially probative of Malcolm's credibility, was "entirely immaterial" to Petitioner's conviction given the remainder of the evidence in the case. *U.S. v. Sessa,* 711 F.3d 316, 321 (2d Cir. 2013). In addition to Malcolm, three other witnesses who were incarcerated with Petitioner at various times prior to his trial – Ivan Roman, David McNeal, and Herbert Maset – each testified that Petitioner confessed to some level of involvement in the crime. Furthermore, according to Hassan Strange, the morning after the crime Petitioner relayed to Strange that "they killed the little one first and then Tina, and that Tony was made to watch" – details that could only have been known by someone present at the time of the crime. Tara Strange overhead that entire conversation and corroborated Hassan's testimony. According to Dorothy Gilleo, Petitioner's first cousin, on January 19, Petitioner at first told her that drug dealers had killed Tony but then told her that Tony had killed the family. She further testified that Petitioner was not wearing his knife that day, which was unusual, and that the knife in evidence looked a lot like Petitioner's knife. Additionally, the testimony of Mark Serrano was detailed, comprehensive, and largely consistent with the physical evidence. It is all but inconceivable that if the jury had learned that Malcolm was mistaken or lying about the identities of the other inmates on the cellblock in February of

---

during trial in order to require reversal of a conviction" and noted that "[t]his position is consistent with our long-held view that when perjury is introduced at trial, the subsequent conviction is to be reversed only if there is reason to believe that the verdict was based on the false testimony." The Supreme Court, however, has never limited the disclosure prong to introduction at trial. Further, subsequent circuit cases such as *Barcelo* and *Cromite*, that cite the disclosure prong, do not explicitly link the disclosure prong to introduction at trial.

2007, that the jury would not have convicted Petitioner of twenty-four counts of first degree murder and related charges. Accordingly, this Court concludes, and respectfully recommends that Your Honor conclude, that Petitioner's claim should be denied.

### iv.    Motion to Strike the Jury Panel

On January 30, 2016, Petitioner made a pre-trial motion to strike the jury panel. The basis for the motion was that, in a conversation in chambers on January 29, 2008, the court informed Petitioner's trial counsel that the Duchess County Commissioner of Jurors "pre-screened" the jurors in Petitioner's case for a "period of service that was anticipated to be four weeks in length." D.E. 11, Ex. 9, at ¶ 3. The Jurors who stated that they were available for a period of four weeks were instructed to report to a different location. *Id.* at ¶ 4. Petitioner argued that this procedure was in violation of New York's Judiciary Law and resulted in substantial prejudice to Petitioner, in that it permitted the jurors to "self-select the length of the case upon which they will serve, or, in the alternative, constitutes a de facto excusal from or postponement of jury service, without the mandated factual determination that 'attendance for jury service in accordance with the summons would cause undue hardship or extreme inconvenience to the applicant, a person under his or her supervision, or the public." *Id.* at ¶ 5. Petitioner also argued that these jurors' "self –excusal" from service had prejudiced defendant in that it had denied him a jury comprised of a fair cross-section of the community. *Id.* at ¶ 9.

On January 31, 2008, the court addressed Petitioner's motion on the record. D.E. 2, Ex. 10. The judge noted that there had been "several conferences where we discussed this procedure with you…. I never heard any complaint at that time." *Id.* at 6. The court further noted that it "just couldn't see the point of bringing in – we prescreened two hundred people. I can't see bringing in six hundred to reach the same effect. So, your application is denied." *Id.* at 8.

On direct appeal, Petitioner argued that the court erred in denying his motion to strike the jury panel. D.E. 13, Ex. 1, at p. 62. Petitioner described the motion to strike the jury panel as having been brought on the ground that "there was a departure from the requirements of the judiciary law in the drawing or return of the panel as to result in substantial prejudice to [Petitioner]." *Id.* Petitioner then reiterated that argument on direct appeal. In response, the People argued that the conversation in chambers on January 29, 2008, which prompted Petitioner's motion, was not on the record and, therefore, Petitioner's claim could not be reviewed on direct appeal. D.E. 15, Ex. 1, at p. 83. In rejecting this claim, the Appellate Division held that "[t]he defendant's claim that the trial court erred in denying his motion to strike the panel of jurors is based on matter dehors the record, and cannot be reviewed on direct appeal." *Gilleo,* 70 A.D.3d at 1050.

It is well established in New York that matters dehors the record may not be reviewed on direct appeal but, rather, must be raised in a NYCPL § 440.10 motion. *See People v. Fate,* 111 A.D.3d 56 (2d Dept. 2013) ("The appropriate vehicle for reviewing claims referring to facts outside of the ... record is pursuant to CPL 440.10, where matters dehors the record may be considered." (internal quotations marks omitted). Here, Petitioner's motion to strike the jury panel was based on a conversation that took place in the trial judge's chambers. That conversation was not recorded and, therefore, was not part of the record on appeal. Accordingly, since Petitioner's claim was not properly raised on direct appeal, and Petitioner may still raise this claim in a NYCPL § 440.10 motion, his claim is not exhausted.

Nevertheless, a "federal court can address an unexhausted claim on the merits if it is "plainly meritless.' " *Bowman v. Racette,* No. 12 Civ. 4153 (LTS)(SN), 2012 WL 1787130 (S.D.N.Y. Apr. 20, 2015), citing 28 U.S.C. § 2254(b)(2). Here, notwithstanding the Appellate

Division's determination that Petitioner's claim involved matters dehors the record, the nature of Petitioner's claim, coupled with the record available to the court, provides sufficient information for this Court to conclude that Petitioner's claim is meritless as a matter of federal law.

Petitioner's assertion regarding the composition of the jury and the manner by which the jury was selected, liberally construed, raises both a state and a federal claim. The state claim is that the method utilized to select the jury in Petitioner's case contravened New York's judiciary law. The federal claim is that the method utilized to select the jury in Petitioner's case resulted in a jury that was not drawn from of a fair cross section of the community.

Petitioner's state law claim is not cognizable on habeas review. *Estelle v. Mcguire,* 502 U.S. 62, 67 (1991). Further, Petitioner's claim that he was deprived of a jury comprised of a fair cross section of the community is meritless. "Criminal defendants have a Sixth Amendment right to trial by an impartial jury drawn from a fair cross section of the community." *Berghuis v. Smith*, 559 U.S. 314, 319 (2010). "In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Duren v. Missouri,* 439 U.S. 357, 459 (1979). The Court need not reach the second and third prongs of this test, because Petitioner has failed to satisfy even the first prong. Although the Supreme Court has stated that the distinctive group showing is "in most cases, easily made [,]" (*Burghuis,* 130 S.Ct. at 1388),[12] Petitioner fails to identify any

---

[12] For instance, an allegation that African Americans or women were underrepresented on a jury panel adequately alleges a distinctive group. *U.S. v. Barlow,* 732 F. Supp. 2d 1, 27 (E.D.N.Y. 2010).

group, let alone a distinctive group, that was excluded from his jury. Rather, he asserts in a generalized and conclusory fashion that the jury selection method utilized in his case entailed self-selection by jurors, which resulted in a jury that was not representative of the community. This assertion is insufficient to raise a constitutional claim properly cognizable on habeas review. Accordingly, this Court concludes, and respectfully recommends that Your Honor conclude, that Petitioner's claim should be denied.[13]

     v.     **Motion to Suppress Petitioner's Statement**

Petitioner argues that the court erred in admitting his statement because at the time he made the statement he had been "illegally arrested and detained." D.E. 3, at p. 3. This claim was first raised in Petitioner's counseled direct appeal, in which he argued that "the court erred in not suppressing his statement because it was a post-arrest, "custodial statement by a suspect who had been illegally arrested and detained." D.E. 13, Ex. 1, at p. 65. The People opposed this claim on the sole ground that Petitioner failed to preserve the claim for review. D.E. 15, Ex. 1, at p. 84. Specifically, the People argued that Petitioner's pre-trial omnibus motion sought suppression of his statement on the grounds that it was involuntary, made in violation of his rights under *Miranda v. Arizona,* 384 U.S. 436 (1966), and was in derogation of his right to counsel. Petitioner, however, never asserted that his statement was the "fruit of an illegal arrest." D.E. 15, Ex. 1, at p. 84. In rejecting the claim, the Appellate Division held that, "[t]he remaining

---

[13] To the extent that Your Honor determines that Petitioner's claim should not be rejected for this reason, the instant petition would be a mixed petition. *Rhines v. Weber,* 544 U.S. 269 (2005). In that case, I would recommend that Your honor issue a brief stay of the instant petition to permit Petitioner to exhaust this claim in state court.

contentions in the defendant's main brief are unpreserved for appellate review and, in any event, are without merit." *Gilleo,* 70 A.D.3d at 1050.[14]

The Appellate Division's determination that Petitioner failed to preserve his claim constitutes an independent and adequate procedural bar that precludes federal review. *See Breazil v. Superintendent Artis,* No. 15 Civ. 1912 (BMC), 2015 WL 9581816, at *fn. 7 (E.D.N.Y. Dec. 30, 2015) (there was an adequate procedural bar to habeas review where the Appellate Division determined that the petitioner's claim that his arrest photograph should not have been admitted because it arose from his illegal arrest was unpreserved). Further, Petitioner has not established cause for the default and prejudice arising therefrom, or that the Court's failure to reach this claim will result in a fundamental miscarriage of justice. In any event, Petitioner's claim is not cognizable on habeas review because it is a Fourth Amendment claim based on the exclusionary rule, and Petitioner had a full and fair opportunity to raise the claim but declined to do so. *Id.* at 11, citing *Stone v. Powell,* 428 U.S. 465 (1976). Accordingly, this Court concludes, and respectfully recommends that Your Honor conclude, that this claim should be denied.

**vi.    Petitioner's Ineffective Assistance of Appellate Counsel Claim**

Petitioner asserts that his appellate counsel, Bruce Petito, Esq., rendered ineffective assistance because he failed to argue on appeal that trial counsel was ineffective in failing to object to the court's charge that Jack Angelvich's testimony could only be considered for impeachment purposes and not for its truth. D.E. 3, at p. 43. In rejecting Petitioner's claim of ineffective assistance of appellate counsel, the Appellate Division held that "appellant has failed

---

[14] Since the Appellate Division did not directly address this claim in its decision, the Appellate Division's reference to "remaining claims" included Petitioner's instant claim. *See supra,* fn. 8.

to establish that he was denied the effective assistance of appellate counsel." *Gilleo*, 92 A.D.3d at 798. This merit-based determination "fails to explicate a coherent rationale for its rejection of petitioner's claim" and, therefore, this Court must determine whether the Appellate Division's "ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent"; in this case, *Strickland,* 466 U.S. at 668. *Aparicio,* 269 F.3d at 94 (citations omitted).

Under *Strickland*, Petitioner must show that his appellate counsel's representation was "fundamentally defective" and that "but for the counsel's errors, there is a reasonable probability that the result of the proceeding would have been different." *Id.*, citing *Strickland,* 466 U.S. at 687. Specifically, "[t]o establish prejudice in the appellate context, a petitioner must show that, had his [or her] claim been raised on appeal, there is a reasonable probability that it would have succeeded before the state's highest court." *Lynch v. Dolce*, 789 F.3d 303, 311 (2d Cir. 2015), citing *Claudio v. Scully*, 982 F.2d 798 (2d Cir. 1992). Satisfying this burden is particularly difficult in the habeas context because "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. Both the AEDPA and *Strickland* standards are "highly deferential," and "when the two apply in tandem, review is 'doubly' so." *Id.* at 788 (citations omitted). "The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

Moreover, the Supreme Court has specifically noted that appellate counsel is not required to raise every "colorable" claim. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). Rather, an important role of the appellate advocate is to "examine the record with a view to selecting the most promising issues for review"; in other words, to winnow "out the weaker arguments on

30

appeal and focus[] on one central issue if possible, or at most on a few key issues." *Id.* at 752-53.

Here, Petitioner's appellate counsel submitted a well-argued, eleven point brief. D.E. 13, Ex. 1. In point five of that brief, counsel argued that the court "erred in charging that the evidence and testimony of Mr. Angelvich was for impeachment purposes only." *Id.* at p. 50. The Appellate Division rejected that claim, finding that "[t]he remaining contentions in the defendant's main brief are unpreserved for appellate review and, in any event, *are without merit.*" *Gilleo,* 70 A.D.3d at 1050 (emphasis added). Since the Appellate Division noted that Petitioner's remaining claims – which necessarily included his instant claim regarding the court's charge - were "without merit," there is no reasonable probability that the Appellate Division would have found trial counsel ineffective for failing to object to the court's charge. Accordingly, if appellate counsel had asserted a claim of ineffective assistance of trial counsel on this basis, there is no reasonable probability that the result of Petitioner's appeal would have been different. Therefore, I conclude, and respectfully recommend that Your Honor conclude, that Petitioner's ineffective assistance of appellate counsel claim should be denied.

## CONCLUSION

For the foregoing reasons, I conclude, and respectfully recommend that Your Honor should conclude, that the Petition should be dismissed in its entirety. Since Petitioner's claims present no questions of substance for review, I conclude, and respectfully recommend, that a certificate of probable cause should not issue. *See Rodriguez v. Scully*, 905 F.2d 24 (2d Cir. 1990) (*per curiam*); *Alexander v. Harris*, 595 F.2d 87, 90-91 (2d Cir. 1979). I further conclude, and respectfully recommend, that the Court should certify pursuant to 28 U.S.C. § 1915(a) that

an appeal from this order would not be taken in good faith.  *See Coppedge v. United States*, 369
U.S. 438 (1962).

## **NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties
shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d),
or a total of seventeen (17) days, *see* Fed. R. Civ. P. 6(a), from the date hereof, to file written
objections to this Report and Recommendation.  Such objections, if any, shall be filed with the
Clerk of the Court, with extra copies delivered to the chambers of the Honorable Kenneth M.
Karas, at the United States District Court, Southern District of New York, 300 Quarropas Street,
White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later
appellate review of any order of judgment that will be entered.  Requests for extensions of time
to file objections must be made to Judge Karas.

Dated: June 8, 2016
       White Plains, NY

                                         Respectfully submitted,

                                         Lisa Margaret Smith
                                         United States Magistrate Judge
                                         Southern District of New York

A copy of the foregoing Report and Recommendation has been mailed to the Plaintiff.